## UNITED STATES OF AMERICA
## DISTRICT OF MASSACHUSETTS

Springfield, ss.                                                                  Docket No.

| | |
|---|---|
| Isheika Hackett | ) |
| Complainant | ) |
| | ) |
| v. | ) |
| | ) |
| University of Massachusetts, | ) |
| Amherst; John C. Reilly, II | ) |
| Respondents | ) |

### Introduction

Defendant Reilly, II threatened the Plaintiff with termination and/or discipline based on a false claim of tardiness.  When she objected he sexually assaulted her and threatened to have her fired if she refused to have sex with him or reported his attack.  Defendant Reilly, II had engaged in a pattern of obscene, vulgar, and derogatory behavior towards the plaintiff and other female employees for over one year before the assault.  The University defendant is vicariously liable for his acts and is directly liable for failing to protect the plaintiff when they knew and/or should have known of his open and notorious harassment.

### Facts

1. Isheika Hackett is an individual who resides at 491 Bridge Road, Apartment 2814 in Florence, MA 01062.

2. Respondent University of Massachusetts, Amherst is a public employer located in Amherst, Massachusetts.

3. Respondent John c. Reilly, II is an individual who was employed as a supervisor by UMASS at all times relevant to this Complaint.

4. Isheika Hackett is employed as a maintenance worker for the Respondent and has worked for the Respondent for several years.

5. During her time working for the Respondent, she had several supervisors including but not limited to John Reilly, II.

6. At some point during the years 2011 and 2012 Mr. Reilly started to make comments of a lewd and sexual nature to and in front of Ms. Hackett. Such comments included but were not limited to:

    a. Discussing his sexual prowess;

    b. Explaining in great detail his sexual encounters with his wife and other women;

    c. Bragging about the size and virility of his genitals.

7. Mr. Reilly, multiple times during the year 2011, invited Ms. Hackett to go out on a date with him and asked her to perform sexual favors for him.

8. Mr. Reilly would make these comments in the presence of other employees and other supervisors. Upon information and belief, he was never disciplined in any manner.

9. Mr. Reilly would invite Ms. Hackett to join him in his office for lunch and insinuated that they would engage in sexual activities while at lunch.

10. On other occasions, Mr. Reilly attempted to kiss her, grab her, embrace her, and expose himself to her.

11. All of his conduct was lewd, sexual, and unwanted.

12. Ms. Hackett rebuked his advances on several occasions, complained about Mr. Reilly to other supervisors, and asked that she be transferred to another job so that she could avoid him.

13. She was transferred during the fall of 2011.

14. On February 20, 2012 Ms. Hackett was scheduled to work on a Saturday. Ms. Hackett, who is a single mother of two children (one of whom suffers from MArfin's Syndrome) would often take as many overtime shifts as possible.

15. Ms. Hackett was surprised to find that Mr. Reilly was the supervisor on shift. He immediately invited her to have lunch with him. She refused.

16. After her lunch break Mr. Reilly called the Complainant to tell her that she was being written up for returning late from her lunch break. Ms. Hackett was not late when she returned to work and was extremely upset because she had already been given two prior disciplinary actions for being late. Ms. Hackett believed that she would be fired if she was written up a third time.

17. Ms. Hackett attempted to speak with Mr. Reilly in a break room used by several staff members. He refused to meet with her and instead demanded that they go to his office. On the way to his office, he pulled her into a large closet/storage room where he had created a make shift bed out of foam.

18. He pressed his crotch against her body and said to her "it's time for your spanking my bad girl (sic)."[1]

19. Mr. Reilly positioned himself between Ms. Hackett and the door in order to prevent her from leaving the room. Every time she tried to run he would push her back, stand in front of her, or otherwise prevent her from leaving.

20. He forced her to turn around and pushed his fingers into her shirt and bra in order to caress her breasts.

---

[1] The entire assault was recorded by the plaintiff using her cell phone.

21. He was grabbing her by her buttocks in order to grind his crotch into hers and was trying to rub her genitals through her clothing.
22. During the entire incident Ms. Hackett was telling him to stop, telling him that she wanted to leave, and yelling at him to leave her alone.
23. He continued to make lewd, sexual, and disgusting gestures at her while demanding that she allow him to perform oral sex for her.
24. After rebuking him multiple times, he screamed at her "you are fucking done here." "You know you can't afford to get in anymore trouble here and so do I. You'll see what happens when you fucking lead me on."

### Sexual Harassment – Hostile Environment Massachusetts General Laws Chapter 151B

25. The Complainant restates all prior paragraphs as if stated fully herein.
26. The Respondents did create, maintain, and fail to prevent an environment in which Ms. Hackett was subjected to offensive, unwanted conduct of a sexual nature which was so severe and pervasive that it materially altered her conditions of employment.
27. The Respondent, UMASS, is vicariously responsible for the conduct of John c. Reily, II and is directly responsible because it knew and/or should have known of the sexual harassment and failed to take reasonable steps to prevent it.
28. As a result, Ms. Hackett has suffered and continues to suffer damages, has experienced and continues to experience extreme emotional distress, and is entitled to compensation for those damages.

### Sexual Harassment – Hostile Environment Title VII

29. The Complainant restates all prior paragraphs as if stated fully herein.

30. The Respondents did create, maintain, and fail to prevent an environment in which Ms. Hackett was subjected to offensive, unwanted conduct of a sexual nature which was so severe and pervasive that it materially altered her conditions of employment.

31. The Respondent, UMASS, is vicariously responsible for the conduct of John c. Reily, II and is directly responsible because it knew and/or should have known of the sexual harassment and failed to take reasonable steps to prevent it.

32. As a result, Ms. Hackett has suffered and continues to suffer damages, has experienced and continues to experience extreme emotional distress, and is entitled to compensation for those damages.

### Sexual Harassment – Quid Pro Quo Massachusetts General Laws Chapter 151B

33. The Complainant restates all prior paragraphs as if stated fully herein.

34. The Respondents did demand sexually gratifying acts in exchange for more favorable treatment at work, did threaten to materially alter the conditions of employment of sexual conduct was denied, and otherwise did make promises, threats, and inducements that required sexual conduct in exchange for more favorable working conditions.

35. The Respondent, UMASS, is vicariously responsible for the conduct of John c. Reily, II and is directly responsible because it knew and/or should have known of the sexual harassment and failed to take reasonable steps to prevent it.

36. As a result, Ms. Hackett has suffered and continues to suffer damages, has experienced and continues to experience extreme emotional distress, and is entitled to compensation for those damages.

### Sexual Harassment – Quid Pro Quo Title VII

37. The Complainant restates all prior paragraphs as if stated fully herein.

38. The Respondents did demand sexually gratifying acts in exchange for more favorable treatment at work, did threaten to materially alter the conditions of employment of sexual conduct was denied, and otherwise did make promises, threats, and inducements that required sexual conduct in exchange for more favorable working conditions.

39. The Respondent, UMASS, is vicariously responsible for the conduct of John c. Reily, II and is directly responsible because it knew and/or should have known of the sexual harassment and failed to take reasonable steps to prevent it.

40. As a result, Ms. Hackett has suffered and continues to suffer damages, has experienced and continues to experience extreme emotional distress, and is entitled to compensation for those damages.

## **Vicarious Liability**

41. The Complainant restates all prior paragraphs as if stated fully herein.

42. The Defendant University of Massachusetts, Amherst is vicariously responsible for any and all acts enumerated herein of its employee, agent, and/or servant, defendant Reilly, II.

43. Prayer for Relief

44. The plaintiff requests that this honorable Court enter judgment in her favor and award:

    a. Damages for emotional distress;

    b. Punitive Damages;

    c. Injunctive Relief;

    d. Any other damages this Court deems to be just and fair.

45. The plaintiff demands a trial by jury in all issues so triable.

Respectfully submitted by counsel,

_____
John Martin
BBO 676359
Mann | Martin, LLP
1071 Worcester Road, Suite 42
Framingham, MA 01701
508-270-0500
508-270-0515